UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BRADLEY WILLIAM MONICAL,

    Plaintiff,

  v.

CHRISTINA TOWERS; DEREK D.
MCCORKHILL; MICHAEL F. GOWER;
JERRY TAYLOR; SAM NAGY

    Defendants.

Case No. 3:17-CV-00501-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Bradley Monical ("Monical"), proceeding *pro se* and *in forma pauperis*, has filed a civil rights action under 42 U.S.C. § 1983. Monical is incarcerated at the Oregon State Penitentiary. He alleges that defendants, who are various employees of Oregon Department of Corrections ("ODOC"), violated his Fourteenth Amendment rights to Due Process and Equal Protection by imposing disciplinary sanctions following his escape from Jackson County Jail. He seeks a declaration that defendants' actions violated his constitutional rights, correction of the misconduct report that was written upon his return to ODOC custody, credit for time spent in segregation, and $100,000 in damages. Am. Compl. 27.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c). Defendants have moved for summary judgment. ECF #67. For the reasons discussed below, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

Monical was admitted to the custody of ODOC on July 11, 2011. Decl. of Sam Nagy ("Nagy Decl.") ¶ 4. Approximately one month later, he was transported to Jackson County Jail for court appearances, and on November 11, 2012, he escaped by leaping from the jail's rooftop exercise yard onto a nearby tree. Am. Compl. 5; Nagy Decl., Att. 3, at 4. U.S. Marshals, Oregon State Police, and members of the Jackson County Sheriff's Office unsuccessfully attempted to apprehend Monical, and he remained at large for nearly one year. Nagy Decl., Att. 3, at 4. The Multnomah County Sheriff's Office Warrant Strike Team arrested Monical on November 13, 2013, and he was returned to Jackson County Jail. *Id.*

Monical returned to ODOC custody on September 28, 2015, and was held in administrative segregation[1] for 11 days pending the results of the investigation into his escape. Nagy Decl. ¶ 4. On October 9, 2015, defendant Inspector Christina Towers ("Towers") issued a misconduct report, outlining the details of the escape and assigning a rule violation of 4.20 Escape I. *Id.*, Att. 3, at 4. Correctional Captain Jeff Dickinson ("Dickinson") reviewed the

---

[1] OAR 291-046-0010(3) defines "administrative segregation" as "administrative housing for those inmates whose notoriety, actions, or threats jeopardize the safety, security, and orderly operation of the facility, staff, visitors, or other inmates." An inmate may be voluntarily or involuntarily assigned to administrative housing without a hearing for no more than 30 days. OAR 291-46-014.

report, and approved holding Monical in temporary segregation status[2] pending a disciplinary hearing. *Id.* Monical was placed in temporary segregation status for five days, until his hearing on October 14, 2015. *Id.*, Att. 3, at 1.

At his disciplinary hearing, Monical admitted to escaping from the Jackson County Jail through the rooftop exercise yard. *Id.*, Att. 3, at 15-16. Defendant Hearings Officer Sam Nagy ("Nagy") issued a preliminary order[3] finding that Monical violated Rule 4.20 Escape I when he left the secure perimeter of Jackson County Jail without authorization. *Id.*, Att. 3, at 1. Nagy imposed a sanction of 90 days' disciplinary segregation with credit for time served, 14 days' loss of privileges upon release from the disciplinary segregation unit, and a $100 disciplinary fine. *Id.*, Att. 3, at 1-2, 7. On October 22, 2015, Monical was transferred to the disciplinary segregation unit at Eastern Oregon Correctional Institution. Nagy Decl. ¶ 4. The functional unit manager approved Nagy's preliminary order on October 28, 2015, and it became a final order. *Id.*, Att. 3, at 2[4]; *id.*, Att. 4, at 19.

---

[2] "Temporary segregation status" is defined as "[p]lacement in a disciplinary segregation unit or local jail pending disciplinary hearing." OAR 291-105-0010(43). When an inmate is placed in temporary segregation status, a hearing "shall be initiated within ten calendar days (including Saturdays, Sundays, and legal holidays)." OAR 291-105-0021(5)(a).

[3] *See* OAR 291-105-0028(12), (15) (authorizing hearings officer to decide whether an inmate has committed a violation and impose a sanction); OAR 291-105-0031(1) (requiring hearings officer to prepare a preliminary order within 10 days of the hearing); OAR 291-105-0031(3) (requiring functional unit manager, within five days of receiving the preliminary order, to approve it or issue an amended order dismissing the misconduct report or changing the sanction, upon which the preliminary order becomes a final order).

[4] This document contains a scrivener's error reflecting the wrong date of October 6, 2015. The correct date is reflected in other records as October 28, 2015. *See* Nagy Decl., ¶ 7, n. 5.

Monical petitioned for administrative review of the final order on November 7, 2015.[5] *Id.*, Att. 4, at 6-17. On November 30, 2015, defendant Inspector General Michael Gower ("Gower") affirmed the final order, finding there was substantial compliance with ODOC rules governing prohibited inmate conduct (OAR 291-105), the violation was supported by a preponderance of the evidence, and the sanctions were in accordance with the rules. *Id.*, Att. 4, at 1.

## STANDARDS

### I. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America,* 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits; a party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FRCP

---

[5] *See* OAR-291-105-0085 (allowing for administrative review of final orders regarding Level I and II rule violations by inspector general).

56(c). A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II. Civil Rights Act, 42 U.S.C. § 1983

The Civil Rights Act, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-94 (1989) (internal citation and quotation marks omitted). Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007) (*per curiam*) (a document filed *pro se* "is to be liberally construed"; a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests) (citation omitted). "However, a liberal interpretation of a civil rights compliant may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). In addition, *pro se* pleadings may not

receive the benefit of every conceivable doubt, but only to reasonable factual inferences in the plaintiff's favor. *McKinney v. De Bord,* 507 F.2d 501, 504 (9th Cir. 1974).

## DISCUSSION

Defendants contend they are entitled to summary judgment because: (1) Monical's due-process claims fail as a matter of law; (2) Nagy provided Monical with all process that was due; (3) Monical has failed to state an equal protection claim; and (4) defendants are entitled to qualified immunity from damages. Mot. Summ. J. 3.

**I.     Due Process Claims**

   **A.     Towers**

In his Amended Complaint, Monical alleges Towers violated his due process rights when she: (1) wrote the misconduct report "11 days after [he] had arrived at CCIC" (Am. Compl. 6); (2) charged him with Escape I "when in fact [he] had been charged with Escape II by the state" (*id.* at 8); (3) got "the date of the escape . . . wrong and then there was no mention that [he] had spent the previous 22 months in segregation" (*id.* at 8-9); and (4) did not obtain a written description of his escape from the Jackson County jail (*id.* at 9). Defendants correctly contend that none of these actions constitutes a due process violation.

Prisoners are entitled to certain due process protections when subject to disciplinary sanctions. *Wolff v. McDonnell,* 418 U.S. 539, 564-71 (1974). These protections, however, adhere only when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Serrano v. Francis,* 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). For an inmate's segregation to constitute a due process violation, the inmate must establish that the segregation "present[s] the type of

atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486.

The court considers three factors in determining whether a condition is atypical and significant:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Id.* at 486-87. Assignment to administrative segregation without other factors present does not implicate such a protected liberty interest. *Serrano*, 345 F.3d. at 1078; *Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir. 2000) (holding prisoner had no cognizable due-process claim because he failed to establish his segregation presented the type of atypical, significant deprivation that might conceivably create a liberty interest).

Here, Monical was moved to administrative segregation on September 28, 2015, pending the results of the investigation into his Jackson County escape. Nagy Decl. ¶ 4. He was housed in administrative segregation status for 11 days, until Towers issued her misconduct report on October 9, 2015. *Id*. After the report was issued, Dickinson approved holding Monical in temporary segregation until Monical's disciplinary hearing. *Id*. Monical was held in temporary segregation for an additional five days pending the disciplinary hearing, which was held on October 14, 2015. Nagy Decl., Att. 3, at 4.

Defendants correctly argue that holding an inmate in administrative or temporary segregation for 16 days, without other factors present, does not amount to a "significant and atypical hardship." Mot. Summ. J. 8; *see Serrano,* 345 F.3d at 1078; *Resnick*, 213 F.3d at 448. There is nothing in the record to suggest that Monical's administrative and temporary

segregation did not mirror those conditions imposed upon inmates in other restricted housing placements. Monical's 11-day stay in administrative segregation comported with OAR 291-046-0014,[6] and his five-day stay in temporary segregation complied with OAR-291-105-0021(5)(a).[7] The duration and degree of restraint was not remarkable, and Monical was given credit for the 16 days he spent in administrative and temporary segregation. Nagy Decl., Att. 3, at 1. There is also no evidence that ODOC's actions affected the duration of Monical's sentence, which is determined by a different set of administrative rules that come with their own procedural safeguards. *See* OAR chapter 291, division 097. Because Monical has failed to establish that his segregation "present[ed] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," his due process rights were not violated. *Serrano*, 345 F.3d at 1078.

Next, Monical claims Towers improperly classified his misconduct as Escape I, when the state had charged him with only "Escape II." Am. Compl. 8. As defendants assert, Monical "confuses" the violation of ODOC administrative rules with the state's criminal charges against him. Mot. Summ. J. 8. Under OAR 291-105-0015(4)(i), an inmate commits Escape I if he "departs without authorization from . . . within the security perimeter of a facility." Nagy Decl., Att. 3, at 4. The state, on the other hand, charged Monical with escape in the second degree under the criminal code, which provides that it is illegal to "escape[] from a correctional facility." ORS 162.155(1)(c). Escape in the second degree is a class C felony. ORS 162.155(2).

---

[6] OAR 291-046-0014 provides that inmates may be held in involuntary segregation for up to 30 days without a hearing.

[7] OAR 291-105-0021(5)(a) provides that a hearing shall be initiated within 10 calendar days if an inmate is placed in temporary segregation status.

These separate offenses have no relation to each other, and Towers accurately classified Monical's misconduct as Escape I under ODOC's administrative rules.

Monical also alleges that Towers' report contained an error regarding "the date of the escape." Am. Compl. 8-9. The report, however, correctly notes that Monical escaped on November 19, 2012. Nagy Decl., Att. 3, at 4. In fact, Monical admits in his complaint that "on November 19, 2012, [he] escaped from Jackson County Jail." Am. Compl. 6.

Monical next argues that Towers' purported failure to follow OAR 291-105-0021(2)(g) resulted in a loss of credit for the 22 months he spent in segregation at Jackson County Jail after his apprehension. Am. Compl. 8-9; Opp. 3-5. First, Monical contends that Towers failed to comply with OAR 291-105-0021(2)(g) when she did not attach "the required report" from Jackson County Jail. Opp. 5.

OAR 291-105-0021(2)(g) provides:

(g) When the alleged misconduct occurs while the inmate is in the temporary physical custody of a jurisdiction other than the Department of Corrections, employees from that jurisdiction may provide a written description of the misconduct to Department employees.

(A) On review of such written information, the officer-in-charge at the facility receiving the inmate back into the physical custody of the Department may determine that the described action violates a rule(s) of prohibited inmate conduct and direct that a misconduct report be submitted.

(B) The written description provided by the temporary custody jurisdiction shall accompany the misconduct report. A misconduct report shall not be submitted absent a written description of the allegation from the temporary physical custody jurisdiction.

(C) If it is determined that the other jurisdiction maintained the inmate in a similarly restrictive status, the inmate shall be credited with the number of days he/she was held in segregation type status by the other jurisdiction.

Subsection (g) is permissive, not mandatory. It states that employees from another jurisdiction "*may* provide a written description of the misconduct to Department employees." OAR 291-105-0021(2)(g) (emphasis added); *see Associated Oregon Veterans v. Dep't of*

*Veterans' Affairs*, 70 Or. App. 70, 74 (1984) (recognizing that "may" is generally a permissive term, while "shall" is generally construed as a mandatory term). Although subsection (B) requires that a written description "shall" be attached to the misconduct report, it is contingent upon the fact that a written description had been "provided by the temporary custody jurisdiction" in the first place. OAR 291-105-0021(2)(g)(B). Here, Jackson County Jail did not provide a written description; therefore, Towers did not have a written description to attach to Monical's misconduct report.

Second, Monical argues that under OAR 291-105-0021(2)(g)(C), ODOC was required to credit him for the 22 months he spent in segregation in Jackson County Jail. Defendants contend that subsection (C) does not apply because Jackson County Jail never provided the predicate "written description of the misconduct" described in subsection (g). This court, therefore, must examine whether subsection (C) applies in a stand-alone fashion, as Monical contends, or whether it applies only when a written description has been provided pursuant to subsection (g), as defendants contend.

The rules relating to statutory interpretation apply to the interpretation of administrative rules. *Mossberg v. University of Oregon*, 240 Or. App. 490, 496 (2011) (citing *Tye v. McFetridge,* 199 Or. App. 529, 534 (2005)). Under Oregon law, the first step in statutory construction is "an examination of text and context" of the statute. *State v. Gaines*, 346 Or. 160, 171 (2009) (en banc). Whether or not there is an ambiguity in the statute, the court may also consider legislative history "where that legislative history appears useful to the court's analysis." *Id*. at 172. "[T]he extent of the court's consideration of that history, and the evaluative weight that the court gives it, is for the court to determine." *Id.* Otherwise stated, the court is obligated "to consider proffered legislative history only for whatever it is worth—and what it is worth is

for the court to decide." *Id*. at 173. "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*. at 172.

Importantly, the court "do[es] not look at one subsection of a statute in a vacuum[.]" *Lane County v. LCDC*, 325 Or. 569, 578 (1997). "[R]ather, [the court] construe[s] each part together with the other parts in an attempt to produce a harmonious whole." *Id.*

The text and context of subsection (C) support defendants' interpretation. Subsection (C) is contained within subsection (g). This suggests that subsection (C) applies only when the predicate act described in subsection (g) has occurred, i.e., a written description of the misconduct has been provided by another jurisdiction. Moreover, both subsections (A) and (B) are predicated upon whether such a written description was provided; thus, it follows that subsection (C) is also dependent on a whether a written description was provided.[8]

Additionally, subsection (C) contains a qualifier. It states that "*[i]f it is determined* that the other jurisdiction maintained the inmate in a similarly restrictive status," the inmate shall be credited with the days spent in segregation type status in the other jurisdiction. OAR 291-105-0021(2)(g)(C) (emphasis added). Here, there was no such determination because Jackson County Jail did not provide ODOC with a "written description" containing those details. The number of days that Monical had been housed in Jackson County Jail segregation, and whether it

---

[8] The history of OAR 291-105-0021(2)(g) provides some additional support for this interpretation. Subsection (g) was enacted in 2005. OAR 291-105-0021(2)(g) (2005). At that time, subsections (A), (B), and (C) did not exist, and the language in subsections (A) and (B) was contained in subsection (g). *Id.* In 2008, the rule was pared down, and the language currently contained in subsections (A) and (B) was eliminated, leaving only the language in the current text of subsection (g). OAR 291-105-0021(2)(g) (2008). In 2009, the rule was enacted in the form it is seen today. OAR 291-105-0021(2)(g) (2009). Because subsections (A), (B), and (C) were enacted at the same time, this is further indication that the rule was designed for all three provisions to be dependent on the existence of a written description from the other jurisdiction.

11 – OPINION AND ORDER

was "similarly restrictive" to ODOC segregation, is information that could have been contained in a written description from Jackson County Jail; yet, Jackson County Jail did not provide one. Nor were ODOC employees required to obtain this information from Jackson County Jail. Subsection (C) does not impose an affirmative duty on ODOC employees to obtain this information; rather, it merely states that "[i]f it is determined" an inmate was maintained in similarly restrictive status in another jurisdiction, ODOC is required to give the inmate credit for time served.

In sum, subsection (C) cannot be examined in a vacuum. *Lane County*, 325 Or. at 578. When the text and context of subsection (C) are examined, it is apparent that defendants were not required to give Monical credit for any time he served in segregation in Jackson County Jail, where the jail had not provided them with the details upon which to make such a determination.

### B. Nagy, McCorkhill, Taylor, and Gower

Monical's claims against Nagy, Gower, defendant Correctional Captain Derek McCorkhill ("McCorkhill"), and defendant then-Superintendent Jerry Taylor ("Taylor") all center on his failure to receive credit for time served under OAR 291-105-0021(2)(g)(C). Monical alleges that defendant Nagy "failed to question the absence of the written report from Jackson County" and "failed to question the lack of documentation in regards to [him] having spent" time in segregation at Jackson County so that he could be "credited the time." Am. Compl. 12-13. He claims that Gower failed to review the materials he provided in support of his claim that he was entitled to credit for time served under OAR 291-105-0021(2)(g)(C). *Id.* at 17-18. He contends that McCorkhill failed to ensure that a written report from Jackson County was attached to Towers' misconduct report and merely "rubber stamped" it. *Id.* at 6, 11-12. Finally,

he claims that Taylor ignored his complaints that he was not receiving credit for time he had served in Jackson County segregation. *Id.* at 16, 19.

These arguments lack merit: as discussed above, subsection (C) is inapplicable because Jackson County Jail provided no written description pursuant to subsection (g).

## II. Equal Protection Claim

Monical contends that his equal protection rights were violated because defendants selectively enforced OAR 291-105-0021(2)(g)(C) and thus "treated him differently then [sic] similarly situated individuals without a legitimate state purpose for doing so." Opp. 25 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Equal Protection Clause is a guarantee that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The essence of that guarantee is that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe,* 457 U.S. 202, 216 (1982)). To prevail on an equal protection claim under Section 1983, a plaintiff must plead and prove either "the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class," *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998)), or that he or she "has been intentionally treated differently from others similarly situated and that there is no rational relationship for the difference in treatment." *Village of Willowbrook,* 528 U.S. at 564.

Monical brings his claim under the latter theory. However, he has proffered no evidence showing that defendants applied OAR 291-105-0021(g) differently to him than other similarly situation inmates. For this reason, his equal protection claim fails.

**III. Qualified Immunity**

Finally, defendants contend they are entitled to qualified immunity from damages. Qualified immunity generally protects discretionary acts by officials. *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). If a plaintiff either fails to show the official's conduct violated a constitutional right or that the right was not clearly established, then the official is entitled to qualified immunity. *Lacey v. Maricopa Cnty.*, 649 F3d 1118, 1131 (9th Cir. 2011), *on reh'g en banc*, 693 F.3d 896 (9th Cir. 2012).

"[W]here the law is open to interpretation, qualified immunity protects [officials] who reasonably interpret an unclear statute." *Mustafa v. City of Chicago*, 442 F.3d 544, 549 (7th Cir. 2006). Thus, even if OAR 291-105-0021(g)(C) is open to more than one interpretation, qualified immunity protects defendants, as their interpretation of the rule was reasonable for the reasons explained above.

## CONCLUSION

Defendants' motion for summary judgment (ECF #67) is GRANTED and this case is dismissed with prejudice.

**IT IS SO ORDERED.**

DATED December 4, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge